STEVE COMPTON, JESS COMPTON and LAFAY-
ETTE RHODES, Partners doing Business as
DOLLIE C. MINING COMPANY, Respondents, v.
THE MISSOURI PACIFIC RAILWAY COM-
PANY, Appellant.

**Springfield Court of Appeals, May 22, 1916.**

1. **RAILROADS:** Negligent Injury to Property: Petition: Sufficiency.
   Action against defendant railroad because of damage to plaintiff's
   building. The charge in the petition was that defendant's em-
   ployees negligently backed a railroad car off the end of a switch,
   where it did not belong, and into plaintiff's engine house, to
   plaintiff's damage. This was a sufficiently specific charge of neg-
   ligence.

2. **NEGLIGENCE:** Res Ipsa Loquitur. The application of the *res
   ipsa loquitur* doctrine is not limited to any particular class of
   cases.

3. ———: ———: Damage to Property by Railroad: Where serv-
   ants of defendant railroad who were operating a train backed a
   car off the end of a switch and into plaintiff's building, the facts
   raised a presumption of negligence for plaintiff under the *res ipsa
   loquitur* doctrine.

Appeal from Jasper County Circuit Court. Division
    Number Two.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*Jas. F. Green* and *A. E. Spencer* for appellant.

*Shuck & Shuck* for respondents.

FARRINGTON, J.—On July 7, 1915, the defendant
railway company took its appeal from a judgment of the
circuit court of Jasper county wherein the plaintiffs re-
covered damages.

The judgment is based on that part of the petition
which follows: "Plaintiffs, for cause of action, state
that on or about the —— day of ——, 1915, they were
operating a mine near Neck City, Missouri, and that in

operating said mine they owned certain machinery, consisting of a concentrating plant, and in connection therewith an engine house in which was located an engine, engine bed, coal house, coal bin, jack bins and machinery and appliances used in connection with said engine and concentrating plant; that one of the defendant's railway switches or spurs extending from its main line of railway extended to within a short distance of plaintiffs' said mill and engine house, where the same terminated. Plaintiffs state . . . that on or about the —— day of ——, 1915, defendant's agents, servants and employees were engaged in operating upon said switch or spur a locomotive and a number of freight cars, and that said company, through its said agents, servants and employees, negligently and carelessly ran said locomotive and freight cars off of the end of the said switch or spur with such force and violence that the same was run into and against the aforesaid engine house of the plaintiffs, thereby totally destroying said engine house, the engine and engine bed, coal house, coal bins and jack bins and the machinery, appliances and accessories used in connection with said engine; plaintiffs state that said property was broken and damaged to such an extent that the same was of no value and became and was worthless, to the plaintiffs' damage in the sum of six hundred dollars. Plaintiffs further state that said injury and damage to said property was caused by . . . the negligence of the said agents, servants and employees in charge of and operating said train as aforesaid." Judgment was asked for the sum of six hundred dollars.

The defendant's answer was a general denial.

Plaintiffs' evidence showed that the car was run off the end of the switch track while bing operated by the defendant's employees and that it struck the engine house some ten feet back of the point where the ends of the rails of the switch track were. Witness Fitzgerald testified that he was standing in front of the boiler and noticed that the cars were "coming up around behind the cinder pile pretty speedy, faster than I ever saw them come in before." He supposed they would stop at the coal bin but they didn't check. He didn't see

the end of the car that hit the engine room. He states that the engine operated by the defendant's employees was pushing up-grade seven or eight cars in order to set a car of coal at the plaintiffs' bin. It was snowing hard at the time but he saw one of the men on the cars give the stop signal. He did not know whether the engine wheels slipped but said the engine was puffing and laboring. The evidence as to the damage is not controverted by the defendant, it being shown that the car after being pushed off the end of the track went into the boiler room of the plaintiffs' mining plant practically destroying the engine house and the engine and other machinery belonging to the plaintiffs; it is not claimed here that the allowance of damages was excessive.

At the close of plaintiffs' case in chief the defendant offered and the court overruled a demurrer to the evidence.

Defendant introduced evidence tending to show that its employees were pushing these cars up to plaintiffs' coal bin on this switch in order to leave some of the cars there; that it was snowing and that the track was slippery; that owing to the conditions signals could be seen only a short distance, and that for this reason one brakeman was placed near the front of the train and the other near the middle; that because of the heavy snowfall the engineer could not see the signal given by the brakeman near the middle of the train; that the brakeman near the middle gave the stop signal in sufficient time, but that there was a slight delay because the other brakeman had to transmit the signal to the engineer, and that the drivewheels of the engine caught on the rails and the cars were propelled forward a short distance farther than was intended. The engineer testified on cross-examination that he knew the length of the switch track; that it was snowing and the track was slick and in bad condition; that he stopped as soon as he could after getting the signal and that the engine went about four or five feet before it stopped, and he said: "If I had gotten the signal in time I wouldn't have had any trouble in stopping my train." He fur-

ther testified that if the man near the rear of the string of cars had given the signal to the other brakeman and he had in turn given it to him (the engineer) in time he could have stopped the engine without backing into the plaintiffs' engine house. One reason that he gave for backing off the end of the switch was that he did not get the signal in time, and the other was that he could not see. The brakemen testified that the signals were given in time but that the engine for some reason did not properly perform.

At the close of all the evidence the defendant renewed its request for a peremptory instruction, which was again refused.

The case was submitted to the jury on an instruction asked by plaintiffs following the charge in the petition and two instructions asked by the defendant, the first being that if the property was destroyed due to an accident or mischance not reasonable to foresee the verdict must be for the defendant, and the other being that the employees of the defendant were only required to exercise ordinary care to do the work in a reasonably safe way and that defendant was not liable merely because the plaintiffs' property was damaged, that before the jury could find for the plaintiffs they must find from the evidence that the defendant's employees negligently failed to exercise ordinary care in switching the cars in a reasonably safe manner, and that they must find that the damage to plaintiffs' property was the direct and proximate result of such negligence.

The petition contained a specific allegation of negligence in that the defendant had failed to put a stop or bumper at the end of the switch track, but as there was no testimony offered on this, at the request of the defendant this charge of negligence was withdrawn from the consideration of the jury, and we therefore eliminated it in copying from the petition.

It is the appellant's contention here that the petition charged only general negligence, and that the case was submitted in plaintiffs' instruction only on general negligence, and states that if the evidence introduced by plaintiffs—which merely showed the manner in which

the damage was done and the amount of the damage—
makes a prima-facie case of negligence, there was no
error in the submission of the case on plaintiffs' instruc-
tion; but appellant contends that upon the evidence
hereinbefore detailed there can arise no presumption of
negligence on its part, and that therefore plaintiffs must
recover on the *res ipsa loquitur* doctrine or not at all,
and that this case is not one that falls within the class of
cases to which that doctrine is applicable.

There are some acts which result in damage that
are so simple and out of the ordinary course of events
that to merely state the ultimate facts is about as spe-
cific an averment as can be framed into language, and
yet this language may also be termed *general*. The
charge in the petition was that defendant's employees
negligently backed a railroad car off the end of a switch
—where it did not belong—and into plaintiffs' engine
house to their damage. It was the backing of the car
off the end of the switch that caused the damage, and
an allegation that the car was so handled, negligently,
strikes us as a specific charge. The instruction, as be-
fore stated, required a finding of negligence on the
charge contained in the petition and this fortifies the
plaintiffs against the attack that they had not made a
prima-facie case on the specific charge in the petition.

On the other hand we are cited to the case of Price
v. Street Ry. Co., 220 Mo. 435, 119 S. W. 932, where the
Supreme Court held that a charge in a petition very
similar to the charge here, under the facts of that case,
was a general and not a specific charge of negligence.
And admitting that the plaintiffs' petition does charge
general negligence, and that the instruction was based
on a finding of general negligence, and that in order for
plaintiffs to recover their evidence concerning the occur-
rence and the damage must be such as to raise a pre-
sumption of negligence (the *res ipsa loquitur* doctrine),
we are still of the opinion that the judgment should be
affirmed because the identical elements which have called
forth the application of the *res ipsa loquitur* doctrine
in other cases of negligence are present here—that is,
the instrumentality that did the damage was under the

sole control and operation of the defendant's employees, the occurrence, that is the backing of the railroad car off the end of a switch track and over against and into plaintiffs' property, is certainly out of the ordinary course of events in handling railroad cars, and the plaintiffs merely know that the car was backed off the end of the switch track and are in no position to explain (from the fact that the car was under the sole control of defendant's employees) what caused this unusual occurrence, and the facts negative any idea of contributory negligence. When these elements combine in a case, whether it be a railroad train setting fire to an adjoining landowner's property where it is shown that sparks from the engine caused the fire (Kenney v. Railroad, 80 Mo. l. c. 578; Wise v. Railroad, 85 Mo. 178—both of which cases were decided prior to the enactment of section 3151, Revised Statutes 1909, which was first passed in 1887); or, whether the action be between master and servant (Klebe v. Parker Distilling Co., 207 Mo. 480, 105 S. W. 1057; Blanton v. Dold, 109 Mo. 64, 18 S. W. 1149); or, whether the action be between carrier and passenger (Price v. Street Ry. Co., 220 Mo. 435, 119 S. W. 932, and numerous other cases in this State); or, in cases where one is walking along a street and is struck by a falling object; or, in cases where a person is struck by objects swinging out from the side of cars in motion (Chesapeake & O. Ry. Co. v. Davis (Ky.), 60 S. W. 14); or, in cases where cross-ties fall from moving railroad cars and strike one not on the right of way (Howser v. Cumberland & Penn. R. Co. (Md.), 27 L. R. A. 154); or, in cases where the door of a railroad car falls on one lawfully trying to open it (Tateman v. Railway Co., 96 Mo. App. 448, 70 S. W. 514). From the foregoing examples it is seen that the application of the *res ipsa loquitur* doctrine is not limited to any particular class of cases. As said in Klebe v. Parker Distilling Co., 207 Mo. l. c. 490, 491, 105 S. W. 1057, the holding that it applied or did not apply to certain particular cases is not to be intended as establishing a universal rule without limitations or exceptions.

It is said in Blanton v. Dold, 109 Mo. l. c. 74, 18 S. W. 1149, "But some catastrophes are of a nature such as carry, in a mere statement of their occurrence, an implication of some neglect. In such event 'the thing itself appears,' as some judges have expressed it; often in Latin, though the idea is none the less forcible or clear in our mother tongue. [Byrne v. Boadle (1863), 2 H. & C. (Exch.) 725; Briggs v. Oliver (1866), 4 H. & C. (Exch.) 407.]" The case of Byrne v. Boadle (cited in the quotation) was where a traveler was permitted to recover on showing that he was struck by a solid substance which was a bale of goods, that at the time this bale of goods was being lowered from the window of a warehouse, and proof of the ownership of the warehouse.

The case of Lane v. Illinois Cent. R. Co. (La.), 9 So. 560, is very similar to our case on the facts. Some cars were backed into the property of the plaintiff destroying a bar-room and the appurtenances and injuring plaintiff's wife. The court in disposing of that case, after stating the facts, remarked: "It is useless to state how the accident occurred. The defendant explains the circumstances under which it happened; but does not attempt to justify it, or even to charge any contributory negligence on the part of the party really injured."

In our case the defendant undertook to explain how this car was run off the track and into the plaintiffs' property, but the explanation was not sufficient to satisfy the jury and is not sufficient to cause us to question the correctness of their determination.

We are cited in appellant's brief to the case of McAnany v. Shipley, 189 Mo. App. 396, 176 S. W. 1079, the application of which to this case we fail to see.

If the appellant is correct in that the charge in the petition is a general charge, then plaintiffs' evidence did no more than sustain a general charge. It is held in Price v. Street Ry. Co., supra, that a plaintiff does not lose the right of resting on the presumption if the evidence introduced (meaning by the plaintiff) does not clearly show what did cause the accident. The only evidence in our case indicating what caused the cars to be

backed too far was put in by the defendant, and the testimony of defendant's witnesses, even had they been introduced by the plaintiffs, would have fallen within the rule in the Price case, as, under their evidence, it is doubtful whether it was a failure to give the signal in time, or the fact that snow was falling, that caused the car to be pushed farther than was intended by the engineer.

Under any view of the evidence and the law governing this case the judgment is for the right party and should be affirmed. It is accordingly so ordered. *Robertson, P. J.,* and *Sturgis, J.,* concur.